## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TODD A. KING, SR., | : | Case No. 3:19-cv-00360 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| SGT. RYAN HALBURNT et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## REPORT AND RECOMMENDATIONS[1]

---

Plaintiff Todd A. King, Sr., is a prisoner at the Montgomery County Jail in

Dayton, Ohio. He filed this case *pro se*. His Complaint lists six Defendants: Sgt. Ryan

Halburnt of the Dayton Police Department, Officer Mark Drick, Officer Jordan

Alexander, Officer Michael Beane, Officer Phillip Watts, and the Dayton Police

Department.

King claims that Defendants violated federal constitutional rights. His claims

therefore arise under 42 U.S.C. § 1983. Defendants seek—and King opposes—dismissal

of his Complaint under Fed. R. Civ. P. 12(b)(6) or, in the alternative, a stay of the

proceedings.

## I.

King alleges in his Complaint that he called 911 for help on February 5-6, 2019

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

due to a domestic problem between him and his common-law wife.  He asserts that he

"became the victim twice…," because the Defendant police officers arrived at his house

and started shooting at him and his children.  (Doc. #3, *PageID* #23).  King maintains

that the shooting occurred when he was holding his younger son in his arms.  The

officers, King says, claimed that he had fired at them with an automatic rifle (an AR-15).

*Id.*  He alleges that at no time did he have a rifle or gun as the officers claimed.  This fact

was established by the officers' search of his residence, according to King.  The search

also destroyed his residence including his surveillance cameras and system.  He

maintains that the officers destroyed these things to prevent him from proving his

innocence of criminal charges that arose from these events.  He also alleges that the

officers "did not inventory into their police property as on the search warrant."  *Id.*

After his arrest in connection with the incident described in the Complaint, King

was incarcerated in the Montgomery County Jail.  *Id.*; *see* Doc. #10, *PageID* #79.  He

asserts that he has been harassed and "refuse[d] his blood pressure medication …."  (Doc.

#3, *PageID* #23).  He states, without identifying a person, "tried to force me to take

mental health medication and, place me in a mental health hospital in order to justify …

police wrongdoing knowing I have know mental illness as was claim[ed]."  *Id.*

King seeks compensation for mental pain and stress, an injury to his right eye,

damage to his house, furniture, clothes, shoes, food, children's clothes, toys, electronics,

a dog cage, a motorcycle, and video surveillance cameras and system.  He also seeks

"release from all charges that [were] fabricated upon me."  *Id.* at 24.  And he accusingly

notes, "Def[a]mation of character, wrongful incarceration, cruel and unusual punishment, mental anguish, lost time and wages, [and] P.T.S.D." *Id.*

## II.

Defendants argue that a Rule 12(b)(6) dismissal, or an alternative stay, is warranted because King's claims are barred and abstention of this case is needed under *Younger v. Harris*, 401 U.S. 37 (1971) due to his pending criminal case in state court. They point out that the criminal case pending against King in state court concerns the events that are the subject of his Complaint.

King initially responds by seeking a grant of relief in his favor under Fed. R. Civ. P. 8(a)(2). His reliance on Rule 8(a)(2) is misplaced. By its plain terms, Rule 8(a)(2) sets pleading requirements rather than providing a basis to grant King relief in his favor based on the allegations in his Complaint. Indeed, no subsection of Rule 8 permits relief in favor of King based on the allegations in his Complaint.

King further contends that dismissal of his Complaint is unwarranted. He argues that taking the evidence in the light most favorable to him, Defendants' actions in shooting at him and his children were not objectively reasonable under the circumstances and constituted excessive force in violation of his rights under the Fourth Amendment to the Constitution. (Doc. #10, *PageID* #s 80-81).

Rule 8(a)(2) provides that to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief …." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Keys v. Humana, Inc.*, 684

F.3d 605, 608 (6th Cir. 2012) (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  Although specific facts are unnecessary, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (internal quotation marks and citations omitted).  "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).

In the instant case, because Plaintiff proceeds *pro se*, his Complaint must "'be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers ….'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III.

"Under *Younger,* 'absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions.'" *Devlin v. Kalm*, 594 F.3d 893, 894 (6th Cir. 2010) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 364 (1989)).  "'*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity.'" *FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 290 (6th Cir. 2018) (quoting *Doe v. Univ. of Ky.*, 860 F.3d 365, 368 (6th Cir. 2017)).

"Three factors determine whether a federal court should abstain from interfering in a state court action: (1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008) (citation omitted). Each factor is satisfied in the present case.

First, when King filed his Complaint in this Court, the criminal case against him was pending in the Montgomery County Court of Common Pleas. *See Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986) ("the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed."). Public records indicate that his state criminal case has proceeded to trial. On March 3, 2020, a jury returned guilty verdicts on many of the pending charges against him, including but not limited to, multiple Counts of felonious assault against a peace officer.[2] *See State of Ohio v. Todd Anthony King*, Case No. 2019CR00477 (Montgomery Cnty Ct. Com. Pl., Feb. 3, 2020). King awaits sentencing in state court. The significance of this for *Younger* is that the criminal case against King in state court remains pending and will continue after his sentencing "until [he] exhausts his state appellate remedies." *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (citations omitted).

---

[2]Defendants have attached to their Rule 12(b)(6) Motion a copy of the indictment pending against King in state court and ask this Court to take judicial notice of the criminal case pending against him in state court. Taking judicial notice of King's state criminal case and related public records is warranted. *See* Fed. R. Evid. 201(b)-(c); *see Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

Second, those proceedings implicate an important state interest—enforcement of state criminal laws. *See Younger*, 401 U.S. at 45 ("Ordinarily, there should be no interference with such officers [state criminal prosecutors]; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done."); *see also Leveye v. Metropolitan Public Defender's Office*, 73 F. App'x 792, 794 (6th Cir. 2003).

Third, King's state criminal convictions on multiple counts of felonious assault against a peace officer depend in large part on the actions King took against the officers. His present Fourth Amendment excessive-force claim against the officers likewise depends upon the entire circumstances surrounding his arrest, *see Graham*, 490 U.S. at 397, including, in part, whether he posed an immediate threat to the officers and whether he resisted arrest. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013). King's actions during the events at issue were doubtlessly litigated during his state criminal trial and—almost certainly—will be litigated upon his appeal. As a result, he has an ongoing adequate forum to litigate in state court the facts critical to his present Fourth Amendment excessive-force claim. And, nothing in King's Complaint suggests that he lacks an adequate forum in which to litigate in the state courts the facts surrounding his arrest. *See Profit v. City of Shaker Heights*, No. 1:18cv1223, 2019 WL 315092, at *4 (N.D. Ohio 2019) ("There is no allegations in the Complaint or other showing by Plaintiff from which this Court could infer that he would be barred from raising in state court the constitutional claims he raises here." citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987)); *cf. James v. Hampton*, 513 F. App'x 471, 475 (6th

Cir. 2013)("Thus the relevant question is not whether James raised her claims in the state proceeding, but whether state law clearly foreclosed her from so doing at the time she filed this lawsuit.").

Two possible results stem from *Younger*, depending upon the type of relief King seeks in his Complaint. If he seek an equitable remedy, such as injunctive relief, dismissal without prejudice may occur. *See Nimer v. Litchfield Tp. Bd. of Trustees*, 707 F.3d 699, 702 (6th Cir. 2013) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996)). If King seeks only money damages, a stay, rather than dismissal, is appropriate. *See id.* King's Complaint seeks monetary compensation for his eye injury and damage to his house and numerous personal items. He also seeks equitable relief in the form of "resease from all charges …." (Doc. #3, *PageID* #24). In this situation, a stay of this case rather than dismissal would be warranted, *see James*, 513 F. App'x at 471, if King faced no other ground for dismissal. Such grounds exist, as the next section reveals.

## IV.

Defendants argue that King's claim of excessive force is barred under the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994).

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id*. at 486–87 (emphasis in original; footnote omitted).

"Generally speaking, 'a claim of excessive force does not necessarily relate to the validity of the underlying conviction and therefore may be immediately cognizable.'" *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (citation omitted). "The mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another." *Id*.

In the present case, as explained above, King has been convicted in state court on numerous counts of felonious assault against a peace officer. His Complaint seeks, in part, "a release from all charges that [were] fabricated upon me." (Doc. #3, *PageID* #24). King says, moreover, that the officers accused him of firing an AR-15 at them. He alleges that he did not. He also alleges that he did not have an AR-15 in his home, as shown from Defendants' search of his home. If so, then he could not have fired an AR-15 at Defendants, and he therefore did not commit the offense of felonious assault against them. These allegations are inextricably intertwined with—and necessarily implicate the invalidity of—King's felonious assault convictions. *See Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (finding that the "struggle between [the plaintiff] and the officers gave rise to both [the plaintiff's] assault conviction and the excessive force claim, and the two are inextricably intertwined."). Indeed, under King's theory of § 1983 liability based on Defendants' excessive use of force, he would have to prove that he did not act a manner that justified the police firing at him—namely, he did not fire an AR-15 at the Defendant police officers. "[I]f true, [this fact] would have precluded his conviction[s]...," *Schreiber*, 596 F.3d at 334, for felonious assault against a

peace officer. The same is true of his claims that Defendants destroyed his surveillance system and cameras to keep him from proving his innocence and that they failed to properly inventory property on the search warrant. (Doc. #3, *PageID* #23). If, under King's theory, Defendants acted in this way to prevent him from proving his innocence of felonious assault against a peace officer, proof of his § 1983 claim would necessarily implicate the validity of his felonious-assault convictions.

Accordingly, King's § 1983 claims are barred unless he proves that his convictions or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.

## V.

King's Complaint raises allegations concerning the medical care he received during his incarceration at the Montgomery County Jail. He clarifies in his Memorandum in Opposition that he refused to take the medication offered to him in jail because it was mental-health medication rather than his blood-pressure medication. (Doc. #10, *PageID* #79). He alleges that he was placed in a mental-health facility "to justify the police wrongdoing…," and was later released back to the "Montgomery County Jail stating [he does] not have mental illness or take medication for mental illness." *Id*. at 79-80.

Defendants contend that King's claims concerning his incarceration at the Montgomery County Jail should be dismissed because they do not operate the Jail and are not involved with any aspect of his incarceration there. This is correct. Accepting

King's allegations as true and liberally construing his Complaint in his favor, there is no suggestion that any particular Defendant violated King's constitutional rights during his incarceration.  As a result, no plausible claim arises against any of the Defendant police officers based on the events that occurred during his incarceration in the Montgomery County Jail.  *See Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) ("a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights.").

### IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint (Doc. #8) be GRANTED; and

2.  The case be terminated on the Court's record.


March 20, 2020                                      *s/Sharon L. Ovington*
                                                   Sharon L. Ovington
                                                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).